**IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

ELIJAH WESBROCK,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
OFFICER WILLIAM B. BASTIEN IV, in his individual capacity, and
OFFICER JESSE SANDOVAL, in his individual capacity.

      Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

      Plaintiff Elijah Wesbrock, by and through undersigned counsel, respectfully alleges for his Complaint and Jury Demand as follows:

      1.      Defendants Officer William B. Bastien IV and Officer Jesse Sandoval of the Denver Police Department ("DPD") wrongfully arrested, unlawfully searched, and retaliated against Plaintiff because he was video-recording public places from a public sidewalk. Plaintiff was video recording an office building of the Federal Bureau of Investigation, on the 8000 block of East 36th Avenue, and public spaces nearby when Defendants confronted him. Plaintiff continued to record, including recording the two officers. In response, Defendants arrested Plaintiff, detained him into the back of their patrol vehicle, and forced him to check into a medical detoxification facility (despite there being no evidence that Plaintiff was under the influence of any substance). Immediately upon entry to the detoxification facility, Plaintiff was released because the facility determined within minutes that Plaintiff was not intoxicated.

2. Defendant City and County of Denver ("Denver"), instead of disciplining and training its officers with respect to these unmistakable violations of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments, condoned their actions. This is not the first time that DPD officers have unlawfully arrested, searched, detained, and retaliated against an individual for filming public places and public officials. Plaintiff brings this action to carry out what Defendant Denver has failed to do: maintain the public's fundamental constitutional rights.

## JURISDICTION AND VENUE

3. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

4. Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

5. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this Complaint.

## PARTIES

6. At all times relevant to this complaint, Plaintiff was a citizen of the United States of America and resident of the State of Colorado.

7. Defendant City and County of Denver is a Colorado municipal corporation.

8. At all times relevant to this complaint, Defendant Officer William B. Bastien IV was a citizen of the United States and a resident of the State of Colorado and was acting under color of state law in his capacity as a law enforcement officer employed by Defendant Denver.

9.      At all times relevant to this complaint, Defendant Officer Jesse Sandoval was a citizen of the United States and a resident of the State of Colorado and was acting under color of state law in his capacity as a law enforcement officer employed by Defendant Denver.

## FACTUAL ALLEGATIONS

10.     On the morning of May 23, 2018, shortly before 9:00 a.m., Plaintiff was using a video camera and mobile phone to record an office building of the Federal Bureau of Investigation ("FBI"), located at 8000 East 36th Avenue, Denver, Colorado 80238, and public spaces nearby. Plaintiff was on public sidewalks at all times while recording the building and surrounding areas.

11.     As Plaintiff was recording from the public sidewalk near the corner of East 36th Avenue and Ulster Street, Defendant Bastien approached in a DPD-marked patrol SUV.

12.     Defendant Bastien parked the vehicle, exited it, and approached Plaintiff, who was video recording the vehicle's arrival and Defendant Bastien as he approached the sidewalk where Plaintiff had been standing. Defendant Bastien began speaking to Plaintiff and Plaintiff did not orally respond. Defendant Bastien aborted his attempt at dialogue and returned to his vehicle, turning the vehicle around in order to head north on Ulster.

13.     Throughout the interaction, Plaintiff would not speak to Defendant Bastien. Plaintiff is a freelance journalist who posts his video-recordings online under the moniker "Silent Citizen." He video-records public places and public officials while remaining silent. He does so from a safe distance and does not interfere with police activity. He does not speak so as to make the objects and individuals he is filming the centerpiece of his freelance journalism, rather than himself.

14. On Ulster, at the intersection of East 36th Avenue, Defendant Bastien rolled down his window to attempt to speak to Plaintiff. Plaintiff did not respond to Defendant Bastien and continued recording.

15. Realizing that Plaintiff was not engaging in dialogue, Defendant Bastien rolled up his window and then parked his vehicle just shy of the intersection. Defendant Bastien then initiated the vehicle's external lights system.

16. Defendant Bastien remained in his vehicle, parked in the street, near the intersection.

17. Around two minutes later a second DPD patrol car arrived at the same intersection as Defendant Bastien waited in his vehicle. Shortly after parking the car near the corner of East 36th Avenue, Defendant Sandoval exited his vehicle and stood in the street.

18. Defendant Bastien then exited his vehicle again and carried on a phone call while he crossed the street onto the sidewalk along East 36th Avenue. Plaintiff recorded the officers while he stood on the sidewalk. Defendant Bastien walked farther down the sidewalk, conducting his phone call. Plaintiff then walked down the sidewalk on East 36th Avenue and recorded Defendant Bastien.

19. As Plaintiff continued recording Defendant Bastien, Defendant Sandoval began rapidly approaching Plaintiff in a threatening way. In response, Plaintiff backed up. Defendant Sandoval got right up into Plaintiff's face and stood chest-to-chest with Plaintiff in a brazen attempt to intimidate him.

20. Defendant Bastien then approached Plaintiff and told him that he could not go onto FBI property. Plaintiff had never entered FBI property and did not do so after this admonition from Defendant Bastien.

4

21. After that, Defendant Bastien told Plaintiff to have a good day and Defendants began walking back to their patrol cars. Plaintiff continued filming Defendants and followed them, at a distance, back toward their patrol cars. Plaintiff remained on the sidewalk the entire time.

22. Seeing Plaintiff following him and filming, Defendant Bastien turned around, walked toward Plaintiff, and pushed him.

23. Then, both Defendants grabbed Plaintiff. At this point, Plaintiff spoke and asked them to take their hands off of him. Defendants grabbed Plaintiff's arms and forced them behind his back.

24. Defendants' actions in grabbing Plaintiff's arms caused him to drop his camera. Defendants continued pulling Plaintiffs arms behind his back while Plaintiff asked what they were doing. Defendants replied that they were restraining him.

25. Defendants then walked Plaintiff to Defendant Bastien's vehicle, pushed Plaintiff against the vehicle, and proceeded to search him.

26. After searching Plaintiff, Defendants forced Plaintiff into the back of Defendant Bastien's vehicle.

27. It was clear to Plaintiff that he was not free to leave. Defendants arrested Plaintiff.

28. Specifically, Defendants arrested Plaintiff for filming them, and public places, from a public sidewalk.

29. When Plaintiff was arrested and searched, there was no probable cause or reasonable suspicion to believe he had committed any crime.

30. Defendants then transported plaintiff to Denver CARES, a medical treatment facility. On arrival, the medical personnel at CARES immediately released him on his own

5

recognizance because it was obvious to them that that he was plainly not under the influence of any substance nor presenting any sort of medical issue. Defendants transported Plaintiffs to CARES in an attempt to cover-up their blatantly unconstitutional arrest of Plaintiff for simply engaging in the First Amendment protected activity of filming.

31. Plaintiff recorded events that were a matter of public concern, given that they involved publicly funded buildings and police officers performing their official duties in public.

32. Defendant Denver did not discipline, or otherwise reprimand, Defendants Bastien and Sandoval for their clearly unconstitutional actions. Defendant Denver did not provide them with additional remedial training. And, Defendant Denver in no way admonished them, making it clear to them, and other members of the DPD, that their actions were in accordance with Denver's customs and practices.

**Denver Has A Custom And Practice Of Retaliating Against Individuals Who Exercise Their Right To Film In Public**

33. Defendant Denver has maintained a longstanding, widespread, and deliberately indifferent custom, habit, practice and/or policy of condoning and ratifying DPD officers actions regularly threaten subjects who are or are about to record them, detaining subjects who are recording them, seizing the devices used for recording, improperly searching the devices, and otherwise retaliating against individuals for recording. As a result, it has become customary among DPD officers to violate individuals' First and Fourth Amendment rights by unlawfully seizing recording equipment, retaliating against individuals for recording, and otherwise taking actions to interfere with otherwise lawful recording activity.

34. The incident involving Plaintiff, standing alone, is sufficient evidence of these customs and/or practices as it occurred out in the open, involved multiple DPD officers, and

resulted in the obvious violation of Plaintiff's constitutional rights. Yet, there is more evidence of Aurora's unconstitutional customs, policies, and/or practices.

35. On August 14, 2014, Levi Frasier video-recorded DPD officers abusing an arrestee from a distance and at a public place. In response, the abusive DPD officers threatened him, took his video-recording device, and deleted the video from it. Luckily, Mr. Frasier was able to recover the video. He subsequently released it to the media. Instead of thanking Mr. Frasier for coming forward to share information about the misconduct of its officers, the DPD released a statement defending the officers' behavior and unfairly attacking Mr. Frasier's character. Denver ratified its officers' actions in public. And, it never disciplined the officers for their actions.

36. On January 26, 2015, DPD officer threatened a witness who was attempting to file the aftermath of the DPD shooting of Jessica Hernandez. That witness tried to video-record the officers' actions in public while she was standing on her own property. DPD officers ordered her not to record. The DPD officers who engaged in this blatantly unconstitutional conduct were not disciplined in any way.

37. On July 5, 2018, Susan Greene was driving east on Colfax Avenue on her way to the bank when she saw an African-American man, handcuffed and seated naked on the sidewalk across from the State Capitol Building. Several DPD officers stood around the man, who had no clothes on except a towel that covered his private parts. Concerned as both a public citizen and professional journalist, Ms. Greene parked her vehicle and crossed the street – by way of the crosswalk – onto the sidewalk nearby the scene. Ms. Greene stood on the public sidewalk and was not obstructing the police investigation. As Ms. Greene stood on the public sidewalk near the intersection of Colfax Avenue and Grant Street, out of the way of the officers, she took

7

pictures of the scene with her iPhone. She was quickly stopped by one of the DPD officers who blocked her, got in her face, and told her to stop. Ms. Greene responded that it was a public sidewalk and that she had the right to take photos. The DPD officer told her that she did not. Ms. Green again asserted her First Amendment right to stand on the public sidewalk and take photos, without being in the way of the officers. Shortly thereafter, the DPD officer decided to arrest her. He grabbed Ms. Greene and twisted her arm backwards beyond its normal range of motion, to an excessive degree, causing Ms. Greene instant pain in her arm and shoulder. Another DPD officer then handcuffed Ms. Greene, tightly enough to leave clearly imprinted and red marks on her skin, and pushed her toward a nearby police car by grabbing her arm roughly and with a painful upward thrust even though at no point did Ms. Greene resist being handcuffed. One of the officers then seized Ms. Greene's iPhone during her arrest. The officers put Ms. Greene – handcuffed – into a police car, where she sat for ten minutes before being released. During the encounter, one officer condescendingly remarked that Ms. Greene should "act like a lady." Denver paid $50,000 to settle Ms. Greene's claims against it.

38.     On June 2, 2020, a DPD officer shot Darrell Hampton in the face with a pepper ball, during protests relating to the murder of George Floyd, because he was filming DPD officers' arbitrary deployment of chemical weapons and use of excessive force during those protests. Mr. Hampton was silently standing on a sidewalk near the Colorado Capitol when an officer riding on the side of a DPD vehicle raised his weapon and fired a pepper ball directly at Mr. Hampton's phone camera. There was no warning before the round was shot. Mr. Hampton's phone shattered on impact and the pepper ball exploded in his face. That officer has not been disciplined for shooting Mr. Hampton in the phone with a pepper ball.

39. Denver's failure to find wrongdoing and failure to discipline officers in this case and in the cases described above reflects a custom or practice of ratifying blatantly illegal and improper conduct.

40. The constitutional violations complained of by Plaintiff were a highly obvious and predictable consequence of a failure to equip DPD officers with supervision to handle the recurring situation of how to handle civilians who are recording officers in public doing their duties. Knowing that such supervision was necessary and declining to implement any demonstrates deliberate indifference on the part of Denver toward persons with whom its officers come into contact.

41. The above-described widespread practice is so well settled as to constitute *de facto* policy in the DPD, and it is allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

42. Defendants' unlawful conduct, as set forth in detail herein, amounts to a custom and widespread practice, even if not authorized by written law or express municipal policy, so pervasive and well-established as to constitute a custom or usage with the force of law.

43. All of the above-described practices of Denver, individually and collectively, were the moving force behind the misconduct described herein and the violation of Plaintiff's rights. If the Denver had provided adequate supervision to its police officers, or indicated to them in any way that civilians have a right to record them doing their duties in public (as long as the civilians were not otherwise interfering with the officers), the Defendants would not have violated Plaintiff's rights in the manner alleged herein

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – First Amendment

9

**Free Speech Violation**
*Plaintiff Against All Defendants*

44. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

45. At all times relevant to this Complaint, Defendants were acting under the color of law.

46. Observing and video recording a public building while standing in a public place, without interfering with any law enforcement activity or law enforcement activity, is a legitimate means of gathering information for public dissemination and is speech protected by the First Amendment to the United States Constitution.

47. Observing the conduct of law enforcement personnel while attempting to video record in this manner also comprises a legitimate means of gathering information for public dissemination and is speech protected by the First Amendment to the United States Constitution.

48. Plaintiff violated no law in recording the outside of a building and its surroundings and also observing and recording law enforcement conduct.

49. Defendants' arrest, search, and use of unreasonable force on Plaintiff because of his First Amendment protected activity constitutes a content-based or viewpoint-based restriction on speech, or both.

50. Defendants' arrest and search of Plaintiff was a denial of his right to free speech guaranteed by the First Amendment to the Constitution of the United States.

51. By arresting and searching Plaintiff, Defendants prevented Plaintiff from observing, reporting on, documenting, and disseminating information relating to a matter of public concern. Namely how Denver's FBI Office physically appears, how governmental

10

personnel affiliated with the Office interact with citizens and the public generally, and how DPD officers interact with members of the public recording.

52. By arresting and searching Plaintiff Defendants prevented, and chilled, Plaintiff from exercising his First Amendment rights.

53. When Defendants arrested and searched Plaintiff, he was standing on a public sidewalk, a traditional public forum, in Denver, Colorado.

54. The actions of Defendants occurred while each was acting under color of State law.

55. Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known.[1]

56. Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

57. Defendants acted pursuant to the custom and practice of Defendant Denver, which condones, tolerates, and ratifies its law enforcement officers violating First Amendment rights. Defendants' violation of Plaintiff's First Amendment rights was in accordance with an informal custom and widespread practice of Denver, although not authorized by written law or express policy, so permanent and well settled as to constitute a custom or usage with the force of law.

---

[1] The right to record police activity at public places is clearly established, both by state statute and the broad consensus of authority from other Circuits. *See, e.g.,* C.R.S. § 13-21-128; *Fields v. City of Phila.*, 2017 U.S. App. LEXIS 12159 (3d Cir. July 7, 2017); *Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017); *Bowens v. Superintendent of Miami S. Beach Police Dep't*, 557 Fed. App'x 857, 863 (11th Cir. 2014); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *Gericke v. Begin*, 753 F.3d 1, 7 (1st Cir. 2014); *Adkins v. Limtiaco*, 537 Fed. App'x 721, 722 (9th Cir. 2013); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 599–600 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78, 79 (1st Cir. 2011); *Iacobucci v. Boulter*, 193 F.3d 14, 25 (1st Cir. 1999); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995).

58. Defendant Denver was aware of its employees' widespread violation of First Amendment rights, as detailed above, and failed to properly discipline its employees for retaliation.

59. Defendant Denver knew, or should have known, that its employees would violate First Amendment rights and would arrest and search Plaintiff in retaliation for his recording activity, violating his constitutional rights.

60. Defendant Denver's customs and practices condoning its employees' violation of First Amendment rights was the moving force and proximate cause of the violation of Plaintiff's constitutional rights.

61. Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages in that he was prevented from reporting on a matter of public concern (and disseminating information related to that matter of public concern), among other injuries, damages, and losses.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – First Amendment Retaliation
*Plaintiff Against Defendants*

62. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

63. At all times relevant to this Complaint, Defendants were acting under the color of law.

64. Plaintiff engaged in First Amendment protected activity by observing and recording police activities and a public building, without interfering with police activity, as a legitimate means of gathering information for public dissemination.

65. Plaintiff's speech and expression was related to a matter of public concern and did not violate any law.

66. Defendants responded to Plaintiff's First Amendment-protected activity with retaliation, including but not limited to arresting him and searching him, without probable cause, or reasonable suspicion, to believe that he had engaged in any illegal activity, and such retaliation would chill a person of ordinary firmness from continuing to engage in First Amendment activity.

67. Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of his First Amendment rights.

68. By unlawfully arresting Plaintiff, Defendants sought to punish Plaintiff for exercising his First Amendment rights, to silence his future speech, and restrict his freedom of expression, and the future speech and expression of others. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in First Amendment-protected activity.

69. Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable persons in Defendants' position knew or should have known.

70. Defendants engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

71. Defendants acted pursuant to the custom, policy, and practice of Defendant Denver, which condones, tolerates, and ratifies retaliation by its law enforcement officers against those exercising First Amendment rights. Defendants' retaliation was in accordance with an informal custom and widespread practice of retaliation in Denver, although not authorized by written law or express policy, so permanent and well settled as to constitute a custom or usage with the force of law.

72. Defendant Denver was aware of widespread retaliation by its law enforcement officers against those exercising First Amendment rights, as detailed above, and failed to properly discipline its employees for retaliation.

73. Defendant Denver knew, or should have known, that its employees would retaliate against those exercising First Amendment rights and would retaliate in arresting Plaintiff, violating his constitutional rights.

74. Defendant Denver's customs and practices condoning its employees' retaliation were the moving force and proximate cause of the violation to Plaintiff's constitutional rights.

75. Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages in that he was prevented from reporting on a matter of public concern (and disseminating information related to that matter of public concern) among other injuries, damages, and losses.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourth Amendment
### Unreasonable Seizure
*Plaintiff Against All Defendants*

76. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

77. At all times relevant to this Complaint, Defendants were acting under the color of law.

78. Defendants initiated a stop of Plaintiff without reasonable suspicion to believe he was committing any crime.

79. Defendants did not have probable cause, reasonable suspicion, or any other legal basis to believe that Plaintiff had committed or was committing any violating of the law prior to initiating a stop of Plaintiff and arresting him.

80. Defendants had no warrant authorizing them to contact or arrest Plaintiff.

81. Defendants who did not personally detain or arrest Plaintiff failed to intervene to prevent the other Defendants from searching Plaintiff without reasonable suspicion, a warrant, probable cause, or exigent circumstances.

82. No legally recognizable exigent circumstances existed which would have justified or permitted Defendants' conduct.

83. Defendants' actions were objectively unreasonable in light of the circumstances confronting him.

84. Defendants' intentional, willful, and wanton seizure of Plaintiff, as described herein, was solely based on Plaintiff's exercise of his First Amendment rights.

85. Defendant Denver has a custom and practice of tolerating violations of the Fourth Amendment of the United States Constitution when they involve arrest for engaging in First Amendment activity.

86. Defendant Denver's customs and practices were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

87. Defendants' actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendants caused Plaintiff damages.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment**
**Unlawful Search**
*Plaintiff Against Defendants*

88. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

89. Defendants were acting under color of state law in their actions and inactions that occurred at all times relevant to this action.

90. Plaintiff has a legitimate expectation of privacy in his body and his property being free from unreasonable governmental search.

91. Defendants had no warrant authorizing any such search of Plaintiff's body or property.

92. No legally recognizable exigent circumstances or other legal justification existed which would have justified or permitted Defendants' conduct.

93. Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

94. Defendants who did not personally search Plaintiff failed to intervene to prevent the other Defendants from searching Plaintiff without reasonable suspicion, a warrant, or exigent circumstances.

95. Defendants engaged in these actions intentionally, willfully, and wantonly.

96. Defendant Denver has a custom and practice of tolerating violations of the Fourth Amendment of the United States Constitution when they involve searches of individuals for engaging in First Amendment activity.

97. Defendant Denver's customs and practices were the moving force behind Defendants' violation of Plaintiff's constitutional rights

98. As a legal and proximate cause of Defendants' actions, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages, and losses.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 2000aa - Privacy Protection Act**
*Plaintiffs Against Defendants Bastien and Sandoval*

16

99. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

100. While arresting Plaintiff, Defendants seized Plaintiff's camera.

101. Plaintiff's video recording was work product material related to his independent journalistic activities.

102. As a freelance journalist, Plaintiff has a purpose to disseminate video recordings to the public online.

103. Plaintiff disseminates his work online and his work involves and affects interstate commerce.

104. There was not probable cause to believe that Plaintiff had committed or was committing any crime.

105. There was no reason to believe that the immediate seizure of Plaintiff's camera was necessary to prevent the death of, or serious injury to, a human being.

106. As a direct and proximate result of the seizure of Plaintiff's camera by Defendants, Plaintiff suffered damages

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in their favor and against Defendants, and award him all relief as allowed by law and equity, including, but not limited to the following:

    a. Declaratory relief and injunctive relief, as appropriate;

    b. Actual economic damages as allowed by law and as established at trial;

    c. Compensatory damages as allowed by law, including, but not limited to those for past and future pecuniary and non-pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, medical bills, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e. Pre-judgment and post-judgment interest at the highest lawful rate;

f. Attorney's fees and costs; and

g. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

DATED this 9th day of April, 2021.

KILLMER, LANE & NEMAN, LLP

*s/ Andy McNulty*
David A. Lane
Andy McNulty
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
dlane@kln-law.com
amcnulty@kln-law.com

*Attorneys for Plaintiff*